IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VITUS ENERGY LLC,** § § § | | |
| Plaintiff § § | | |
| v. § § | CIVIL ACTION NO. 5:20-cv-00930 | |
| **USAA FEDERAL SAVINGS BANK,** § § § | | |
| Defendant § § § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Vitus Energy, LLC ("Vitus"), files this Original Complaint against Defendant USAA Federal Savings Bank ("USAA"), and for cause of action would respectfully show the Court as follows:

### I.    PARTIES

1. Plaintiff Vitus Energy, LLC is an Alaska limited liability company with its principal place of business in Anchorage, Alaska.

2. Defendant USAA is a federal savings bank with its principal place of business in Bexar County, Texas that does business in Alaska. USAA may be served with process through its registered agent, the Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Co., 211 7th St Ste 620, Austin, TX 778701-3218.

### II.    JURISDICTION AND VENUE

3. This Court has original jurisdiction over this suit under 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue in the Western District of Texas, San Antonio Division is proper under 27 U.S.C. § 1391(b)(1) because Bexar County, Texas is within this district and is where USAA is headquartered.

### III.   FACTS

5. This case concerns USAA's wrongful acceptance and deposit of checks that were explicitly made out to Vitus, marked "For Deposit Only", but then fraudulently deposited into an employee's personal account. USAA accepted these checks despite lacking any basis to believe such deposit was authorized. USAA has refused to accept any accountability for this situation, or even permit Vitus to engage in basic measures designed to ascertain the full extent of the fraudulent deposits.

6. Vitus sells fuel and provides various fuel-related services to customers around the State of Alaska. Some of these customers pay Vitus for its goods and services by checks made out to Vitus as payee. Vitus has no offices, makes no sales, and does not otherwise conduct any business outside of the State of Alaska.

7. Vitus's business practice is to endorse all incoming checks using its commercial stamp, which says "For Deposit Only," and identifies Vitus's bank and its account number.

8. Vitus employed Sharron Johnson ("Johnson") as a Documents Control Administrator in Alaska between July 2, 2019 and January 15, 2020, when she was terminated.

9. During the period Johnson was employed by Vitus, Johnson took an undetermined number of checks made payable to Vitus (collectively the "Vitus Checks") and electronically deposited them into her personal account with USAA ("Johnson's USAA Account"). Johnson appears to have used USAA's remote deposit features to take photographs of the Vitus Checks for the deposit.

10. Johnson had no authority from Vitus to cash or deposit any checks made out to Vitus, and Vitus had no knowledge that Johnson was depositing the Vitus Checks into Johnson's USAA Account.

11. Vitus was named as payee on each of the Vitus Checks.

12. Vitus does not have a bank account with USAA, nor did it mark or endorse any checks for deposit into Johnson's USAA Account.

13. In early December 2019 and January 2020, Vitus made calls to various Vitus customers with unpaid accounts. At that time, Vitus was informed that those customers had mailed payment by check. Two customers with unpaid accounts later verified their checks to Vitus had cleared their bank accounts, and provided Vitus with electronic copies of the deposited checks. Each of those checks had handwriting on the endorsement section of the back of the check, labeled "For Deposit Only USAA FSB Acct #0235218499."

14. Vitus reported the theft to the Anchorage Police Department on January 8, 2020.

15. On that same day, Vitus spoke by telephone with a USAA representative, seeking additional information about the other Vitus Checks which may have been deposited into Johnson's USAA Account. The USAA representative stated that Vitus needed Johnson's consent in order to provide information about deposits made into Johnson's USAA Account.

16. On January 9, 2020, Vitus spoke to USAA's fraud department, who confirmed that Johnson's USAA Account had been placed in restricted status due to the theft claims. USAA stated that it would provide Vitus with information about deposits into Johnson's USAA Account if it received account holder approval or a subpoena from the Anchorage Police Department.

17. On January 10, 2020, Johnson and a Vitus representative had a joint telephone conversation with a USAA representative, during which Johnson gave USAA express approval to provide Vitus with information about Johnson's USAA Account.

18. At that time, USAA admitted that it had accepted at least 21 Vitus Checks in an amount of at least $87,149.28 for deposit into Johnson's USAA Account during the period of October 31, 2019 through January 6, 2020.

19. Vitus requested a more comprehensive search of Johnson's other deposits to determine the full extent of Vitus's loss. USAA promised that it would contact Vitus via its fraud department with further information on the fraudulent bank deposits, copies of the stolen checks, and information about other deposits of Vitus Checks. To date, USAA has not sent any of this promised documentation, or any additional information about the stolen Vitus Checks.

20. Vitus repeatedly called USAA between January 13 and January 15, 2020 seeking additional information about the stolen Vitus Checks, any other Vitus Checks that Johnson may have deposited into Johnson's USAA Account or the accounts of her family members, and to request the return of the wrongly deposited funds.

21. During the last call, on January 15, 2020, USAA placed Vitus on hold for two hours before Vitus was forced to hang up.

22. On January 17, 2020, Vitus made a final written demand upon USAA for information and documentation about the Vitus Checks and return of the amounts that had been wrongfully deposited. USAA did not respond.

23. Despite permission from Johnson, USAA has refused to perform a full review of Johnson's USAA Account to allow Vitus to determine how many checks were wrongfully accepted by USAA and the full extent of Vitus's loss.

24. Despite repeated demand, USAA has failed to return any portion of the wrongfully deposited Vitus Checks, which total at least $87,149.28.

25. USAA's failure and refusal to provide additional information about the Vitus Checks has made it impossible for Vitus to submit a complete insurance claim regarding the loss.

Vitus has also not been able to provide the Anchorage Police Department with a full accounting of its loss or provide copies of all of the stolen checks. Vitus has therefore incurred significant inconvenience and expense as the result of USAA's intransigence.

26. All conditions precedent for the bringing of this suit have been performed or have occurred.

27. Vitus initially filed suit in the state courts of Alaska on January 22, 2020. USAA removed to the U.S. District Court for the District of Alaska, Case No. 3:20-cv-0035-TMB, then moved to dismiss pursuant to Rule 12(b)(2) or alternatively transfer venue under 28 USCA 1404(a). USAA's basis for the motion was that it had not directed any actions specifically at Alaska or Vitus, and therefore the court should dismiss for want of personal jurisdiction. The federal court dismissed Vitus's complaint without prejudice for lack of personal jurisdiction over USAA.

### IV.   CLAIMS

#### Count 1: Violation of the Uniform Commercial Code

28. The allegations in the paragraphs above are incorporated herein by reference.

29. By depositing Vitus Checks into Johnson's USAA Account, USAA converted the checks, violating the UCC[1] by failing to pay the Vitus Checks' proceeds to Vitus or apply them consistently with the endorsements on the checks.

30. By depositing Vitus Checks into Johnson's USAA Account, USAA converted the checks and violated the UCC[2] by making payment to a person not entitled to enforce the Vitus Checks or receive payment for the Vitus Checks.

31. USAA is liable to Vitus for damages in the aggregate amount of at least $87,149.28.

---

[1] Alaska Stat. 45.03.206(c)(2); Tex. Bus. & Com. Code § 3.206(c)(2).
[2] Alaska Stat. 45.03.420; Tex. Bus. & Com. Code § 3.420.

**Count 2: Violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. 45.50.471 et seq. ("UTPA")**

32. The allegations in the paragraphs above are incorporated herein by reference.

33. By providing remote banking services to Alaska residents, USAA conducts trade or commerce in the State of Alaska.

34. By depositing the Vitus Checks into Johnson's USAA Account in violation of the UCC, by refusing to provide information and documentation that would allow Vitus to determine the total number and dollar amount of Vitus Checks that were wrongfully accepted by USAA for deposit into Johnson's USAA Account, and by refusing to return any amount of the Vitus Checks that USAA wrongfully accepted for deposit into Johnson's USAA Account, USAA engaged in unfair trade practices in violation of Alaska Stat. 45.50.471 of the UTPA.

35. Vitus was damaged by USAA's unfair trade practices in an amount of at least $87,149.28.

36. Pursuant to Alaska Stat. 45.50.531(a) of the UTPA, USAA is liable to Vitus for treble damages.

37. Pursuant to Alaska Stat. 45.50.537(a) of the UTPA, USAA is liable to Vitus for reasonable attorney's fees and costs in bringing this action.

### V.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that Defendant be cited to appear and answer herein, and that upon hearing and trial, Plaintiffs have the following relief:

1. Judgment against USAA for the full amount of damages sustained by Vitus as a result of USAA's violations of the UCC and UTPA;

2. An award of treble damages under the UTPA;

3. Reasonable and necessary attorneys' fees and costs pursuant to the UTPA;

4. Costs of court;

5. Pre- and post-judgment interest at the statutory rate; and

6. Such other and further relief, both at law and in equity, to which Plaintiff may be deemed justly entitled.

Respectfully submitted,

By: /s/ *Richard Milvenan*
Richard D. Milvenan
Texas Bar No. 14171800
Andrew M. Edge
Texas Bar No. 24071446
Ethan J. Ranis
Texas Bar No. 24098303
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 495-6000
Facsimile: (512) 505-6331
rmilvenan@mcginnislaw.com
aedge@mcginnislaw.com
eranis@mcginnislaw.com

ATTORNEYS FOR PLAINTIFF
